## Smith et al. v. Smith.
## Smith v. Smith et al.

May 28, 1943.

Jean L. Auxier, P. B. Stratton, and E. D. Stephenson for appellant.

J. J. Moore, A. F. Childers, G. R. Blackburn, and E. J. Picklesimer for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part, reversing in part.

These two appeals have been heard together and both will be disposed of in this opinion.

At the time John and Ida Smith married on Nov. 30, 1910, he was a widower past 50 years of age and she was just a few months under 21. He was the father of six children and possessed an estate of about $23,000, while it was her first marriage and she had no property. On Nov. 25, 1910, they entered into a prenuptial contract by which the wife, in case she survived her husband, was to receive $2,000, the household goods and was to have a homestead in the house and 15 acres so long as she remained his widow; all of which she agreed to accept in lieu of her distributable share of his estate.

Six children were born to their marriage and they adopted a grandchild. Mrs. Smith was industrious and frugal and her husband possessed the same traits, but his frugality developed into miserliness and when he died on Aug. 12, 1940, at the age of 84, he left an estate of approximately $200,000, consisting of about $165,000 personalty and the remainder in realty.

On Sept. 11, 1937, Mrs. Smith filed suit against her husband averring that she was an infant when the prenuptial contract was entered into and that her signature thereto was procured by fraud and deception practiced by her husband, and she asked that the contract be set aside. His answer was a traverse followed by a counterclaim asking a divorce upon the ground of lewd and lascivious conduct, to which latter plea the court sustained a demurrer. On Dec. 4, 1937, while the suit to cancel the antenuptial contract was pending, she filed an action against him for $300 per month maintenance. Mr. Smith filed suit for divorce on Jan. 5, 1938, averring abandonment and cruel and inhuman treatment. She made her

answer to this action a counterclaim and asked a divorce mensa et thoro and $100,000 alimony.

On or about July 1, 1938, an agreed judgment was entered in the action to set aside the prenuptial contract which reads:

"By agreement of the parties and their counsel, this case is dismissed settled, at defendant's cost, pursuant to the terms and the conditions of an indenture duly made and executed between the parties on June 30, 1938, and which is in words and figures as follows:

(Copy)
"Field, Judge."

Immediately following is the contract dated June 30, 1938, reciting that the parties are living together but that due to the increase in the husband's estate the antenuptial agreement is not fair and it is set aside and the wife is given immediately $25,000 cash in lieu of all interest she might otherwise have taken in the husband's estate, and he relinquished all interest he might take in her estate as surviving husband. The husband agreed not to discriminate against the children of his second marriage in distributing his estate and that all children of both marriages would share equally in the distribution of his property. The agreed judgment further provided that the action involving the antenuptial contract should be dismissed settled and that all other actions between the parties are to be dismissed without prejudice; that the husband recognized his obligation to support his wife and infant children and agreed to do so.

Mr. Smith died intestate and his widow and the Pikeville National Bank & Trust Company (hereinafter referred to as the bank) qualified as his personal representatives. On Feb. 20, 1941, Mrs. Smith individually filed a petition in equity against the bank as administrator of her husband, also naming his heirs-at-law as defendants, wherein she sought a cancellation of the postnuptial agreement of June 30, 1938, on the ground that it was void, and she asked to be adjudged a widow's distributable share in her husband's estate. The petition is voluminous and attacks the antenuptial agreement on the grounds that she was an infant when it was executed and her signature was obtained by fraud on the part of her husband; that by threats to disinherit her children

the husband forced her to sign the postnuptial agree-ment; that although Mr. Smith agreed in the postnuptial contract to support his wife and infant children, he deliberately refused to do so in order to make same void and often said it was of no force or effect; that as the parties were living together as husband and wife at the time the contract was executed it was void; that after paying her attorney's fees she had $21,000 left of the $25,000 received under the contract, a considerable portion of which was consumed in payment of obligations incurred in supporting her husband and family before the postnuptial contract was executed, and the balance (except $300) of this $25,000 was expended in supporting her husband and family between the date the contract was executed, June 30, 1938, and the husband's death on Aug. 12, 1940. Her purpose, we presume, in pleading that she supported her husband and family since receiving the $25,000 was to show that Mr. Smith had abandoned the postnuptial agreement.

The answers traversed the allegations of the petition and pleaded affirmatively that the postnuptial agreement was incorporated in and became a part of the judgment referred to above, which judgment it averred had never been appealed, vacated or modified and is now in full force and effect and is a bar to plaintiff's action. Replies completed the issue.

Much proof was taken and the cause was submitted to the chancellor who adjudged that the contract of June 30, 1938, was valid and that same was entered and made a part of the judgment above referred to and that the judgment is valid and binding upon Mrs. Smith.

She asks a reversal because: 1. The consideration was inadequate to support the contract; 2. it was obtained by duress; 3. the husband abandoned the contract; 4. the contract was unfair to a degree not permitted between husband and wife. Defendants insist that this agreement became a part of the judgment of the court and as Mrs. Smith's pleadings merely attack the contract and do not charge fraud or duress in obtaining the judgment, no cause of action was stated by her.

It is not disputed that Mr. and Mrs. Smith could enter into a valid postnuptial contract wherein each relinquished his or her respective interest in the property of the other, if it is fair and equitable, and supported by

an adequate consideration. Smith's Adm'r v. Price, 252 Ky. 806, 68 S. W. (2d) 422; Redwine's Ex'r v. Redwine, 160 Ky. 282, 169 S. W. 864, Ann. Cas. 1917A 58. Without going into details, the record shows that the antenuptial contract was cancelled, and Mrs. Smith immediately received $25,000 in cash in which her husband released all interest in the event she predeceased him; she was furnished a true and accurate itemization of her husband's estate on March 21, before the agreement was signed on June 30, 1938; her children were to share equally in the estate with the children of the former marriage, which they did. But it is not necessary for us to decide whether the contract was supported by adequate consideration and was fair and equitable, and we do not do so, because it became a part of a valid judgment which was not attacked by Mrs. Smith's pleadings. The answers of the defendants pleaded this judgment in bar to the petition, and it constitutes a good defense to the action. The rule seems to be that when parties reach a settlement of their controversy and incorporate it in an agreed judgment free from fraud and duress which is duly entered, such judgment is as binding upon them as if rendered upon controverted facts and after due consideration by the court, and is a bar to any further action for the same cause. 34 C. J., Section 1198, p. 779; 31 Am. Jur., Sections 463, 464, p. 107; Renick v. Renick, 247 Ky. 628, 57 S. W. (2d) 663; Honaker v. Honaker, 267 Ky. 129, 101 S. W. (2d) 679; Pauley v. Pauley, 280 Ky. 66, 132 S. W. (2d) 512; Barrett v. Barrett, 287 Ky. 216, 152 S. W. (2d) 610.

The facts in the instant case clearly distinguish it from Hoskins v. Hoskins, 201 Ky. 208, 256 S. W. 1, relied upon by plaintiff. The Hoskins entered into a separation agreement settling their property rights during the pendency of a divorce action, which agreement was entered as the judgment of the court. However, the parties became reconciled and resumed marital relations and dismissed the divorce proceeding. Under the authorities cited in the Hoskins opinion this had the effect of nullifying the judgment since it was but ancillary to the divorce judgment to follow which was never entered. In the case at bar no divorce was contemplated, the agreed judgment was not entered in the divorce suit, and the judgment recited the parties were living together and would continue to do so.

Mrs. Smith tendered an amended petition wherein she reiterated her attack upon the postnuptial agreement and then pleaded that the decedent was indebted to her for $21,000 she expended in supporting him and his family since June 30, 1938, and she asked judgment in that sum against his estate in the event the court adjudged she was not entitled to a cancellation of the contract. Upon defendants' objection, the court refused to let this amendment be filed and it was marked "tendered and offered to be filed" and made it a part of the record. The court's reason for refusing to let this pleading be filed is not shown by the record, nor is it discussed in briefs. However, we presume it was because Mrs. Smith filed no proof of her claim with, or made demand upon, the personal representative for payment prior to tendering this pleading, as provided by Sections 3870-3874 KS (now KRS 396.010; 396.020). This pleading was verified and for years it has been the rule that the demand may be waived by the personal representative. If the administrator had not desired to have waived the demand, the proper way for it to have raised the question was by pleading or by rule to show cause why the petition should not be dismissed. Rogers v. Mitchell's Ex'r, 58 Ky. 22, 1 Metc. 22; Eastern State Hospital v. Lyttleton, 176 Ky. 756, 197 S. W. 429; Bootes v. Gwinner's Adm'r 251 Ky. 322, 64 S. W. (2d) 904.

The court erred in not allowing this amendment to be filed, therefore the judgment is reversed with directions to allow this pleading to be filed, or another one which only sets up Mrs. Smith's claim for money expended in support of her husband and family from June 30, 1938, until her husband's death. Neither the testimony nor the reference to the many exhibits said to be filed (which are not found in the record) in support of this claim show the amounts of her expenditures. Mrs. Smith should be allowed to present her proof and exhibits to the chancellor in an intelligible form, and to retake it if necessary.

We come now to the consideration of the appeal in Rowland Smith et al. v. Ida Smith. In the course of the other suit the county court removed Mrs. Smith who was acting as co-personal representative with the bank. After the chancellor dismissed Mrs. Smith's petition in her action to have the postnuptial agreement set aside she, without superseding the judgment, prosecuted an

appeal which has been disposed of above. The heirs moved the court to order a distribution of the estate pending the appeal and upon its refusal brought this declaratory judgment action to determine whether or not it was the duty of the bank as the remaining sole administrator to distribute the estate and whether it should make distribution pending the appeal.

The chancellor adjudged that the bank as the sole remaining administrator had the authority to make distribution, but it was adjudged that the heirs were not entitled to a distribution of the real estate pending the appeal and that the administrator should distribute only one-half of the personal property pending the appeal.

The rule is that where there is joint administration of an estate and one of the personal representatives dies, or is removed, the entire authority vests in the surviving, or remaining, administrator. 34 C. J. S. Executors and Administrators, Section 1047 (c), p. 1329. Indeed, it is not contended that the law is otherwise. Section 747 of the Civil Code of Practice providing ''an appeal shall not stay proceedings on the judgment unless a supersedeas be issued'' has been construed to mean just what it says. Fidelity & Deposit Co. of Maryland v. Helm, 217 Ky. 384, 289 S. W. 280; United States Fidelity & Guaranty Co. v. Adams' Ex'rs, 232 Ky. 104, 22 S. W. (2d) 450. Therefore, the chancellor erred in directing any part of the distribution of the estate be held up pending the appeal by Mrs. Smith, and the judgment is reversed.

It might not be amiss to add that since the judgment in the other appeal is reversed in part and Mrs. Smith is thereby allowed to plead and present proof of her claim for $21,000, the chancellor will direct that sum, with interest from June 30, 1938, withheld from the distribution so as to satisfy any judgment she may obtain. It is not to be overlooked that claim is still pending against the estate and naturally the administrator cannot make full distribution with a claim pending upon which judgment has not been entered.

The judgment in Ida Smith v. Rowland Smith et al. is affirmed in part and reversed in part for proceeding consistent with this opinion. The judgment in Rowland Smith et al. v. Ida Smith is reversed.